This case for argument United States v. Ali Ms. Brooke Judge Posner, Judge Keeney, Judge Sykes, State Police, the Court Good morning still. In this case, to begin, it is important that we get the standard of review right. And although we agree with the government that factual findings are reviewed by a clearly erroneous standard, and they do have the burden by preponderance to prove those facts, they ignore the fact, if you will, that there is de novo review in applying those facts to the law. Here, the law we're talking about is the guideline enhancement. So with that de novo standard in mind, it's important, I think, to answer two questions. First, did the government expenditures here amount to unnecessary expenditures and substantial expenditures? We do not dispute the facts. What we dispute is the application of those facts to this guideline in this case. So the reason that I submitted the language of the statute yesterday was because I think to start thinking about this case, we need a baseline. What is reasonably necessary to violate the statute? So the statute requires removal of a child from the United States with the intent to obstruct lawful parental rights. And it defines lawful parental rights as either a court order, operation of law, or some other binding agreement. So here we have an undisputed time period from 10.55 p.m. on May 2nd to 6.35 p.m. on May 6th, which is three days and 19.5 hours, a little less than four days. And the question then becomes, just in terms of the timing, is it possible to have an international parental kidnapping case in less than three days and three-quarters of a fourth day? Now, we've all probably taken international flights and then tried to on the unlikely, it could be done in less than three days. So the case law supports that. Every case this court has decided or any other court has less time involved than the three and three-quarter days here. In Ludeke, it was two weeks. In Bradditch, it was three weeks. But the government relies on Seifert, I think I'm saying that right, an unpublished case that came to this court in an Andrews brief. Seifert happened right after 9-11. It doesn't say how much after, but clearly sometime in September of 2001, because the charge was in October of 2001. So we don't know exactly how much time. We know this court says significant time in that opinion, consumed valuable and significant resources, and used the idea that the government resources were already strained because of the disaster of 9-11. We don't have anything like that here. We have just the basics. The government also relies on a Sixth Circuit case, Tackett, which was a perjury case. And they say that involved four days. But it actually involved four days of electronic surveillance, plus investigation of witnesses, plus an entirely new trial of the defendant's son, who they had perjured themselves to cover up for. So there is no comparison there. If we go to the actual substantialness, if you will, of the resources, this case is unlike any other case in that way. There are no false identifications. There's no false driver's license or passport. There's no prepaid cell phone to hide away. Indeed, when he gets to Turkey, he calls his wife numerous times, not just once, says, I'm here with the children in Turkey. Please take the money I left you and come here now. She doesn't want to do that. But he calls and calls. There's no question that everybody knew where he was. He announced it to the world. It didn't require additional investigation. It didn't require an additional grand jury. He didn't require new trials. There was no search over four continents for him. And he didn't institute any new legal proceedings. This case is unlike every other reported or unreported case that either the government or the defense could find. And in addition, the Sentencing Commission, they know how to make a specific offense characteristic apply. If you look at almost any guideline in the book, let's take robbery to be 3.1, you will see that there's specific offense characteristics, including for robbery, add two points if there's a financial institution involved. What that means is in every bank robbery case, the enhancement applies. The same thing is true in theft. They say in 1037 violation cases, which are female fraud cases, add two. They could have done that here for this 2J1.2 enhancement. They could have said apply it in every parental kidnapping case. But they did not. So there has to be something other than the reasonableness required in the statute to go forward. For those reasons, I would ask this court to remand for resentencing without application of the enhancement. Okay. Thank you. Thank you. Ms. McShane. May it please the court. Heather McShane on behalf of the United States. The district court did not clearly err when it applied a three-level enhancement pursuant to guideline 2J1.2b2 because the defendant's offense in this case resulted in substantial interference with the administration of justice. Well, how is substantial interference measured? Your Honor, it can be measured on a number of factors. But in this case, with these facts, it was measured by the amount of manpower, hours over a four-day period across two continents. It was a qualitative analysis with respect to the four days involved with respect to getting the children back to Chicago. So it's a measurement not just in time, but also it's qualitative in terms of what happened during those four days. I don't have any problem with the substantiality issue here. That's heavily fact-bound and we've got many law enforcement agencies, international and domestic, involved. But the commentary to the guideline also requires unnecessary expenditure of substantial government resources. And I'm not sure how to read that in the context of this crime because the defendant argues that an international kidnapping will always, by definition, involve necessary expenditures to get the children back. And so how are we to distinguish between necessary and unnecessary governmental expenditures for purposes of this enhancement? With respect to international parental kidnapping? Right. This crime in particular. That's what we're here for. Is Your Honor asking with respect to these specific facts or just generally? What's the meaning of that term in this context? That's in the commentary, it's not in the guideline itself. The guideline just says substantial interference with the administration of justice, but then it's further defined in the commentary. And this is the only subsection of the commentary that is conceivably implicated here. So there must be the unnecessary expenditure of substantial governmental resources. Your Honor, I don't know how to answer that with respect to the international parental kidnapping. Because with international parental kidnapping, the argument would go that these resources were necessary and they were the typical types of resources that if the children actually do make it to the other country, not an attempt scenario, that all of these expenditures would have been necessary. Looking at this Court's decision and reasoning in Hayes, the Court did not go into that language of the commentary, but it did talk about not differentiating between just looking at the facts and what was necessary, at least in part, arguably necessary to the investigation and the prosecution of the underlying crime. So I'm not answering your question, Your Honor. I don't know what facts would apply. I mean, there could be a case that's charged under Section 1204, the substantive crime here where the parent kidnaps the children and then brings them back. I mean, that's still chargeable, right? And then there is no unnecessary expenditure. It is. I mean, I think perhaps in an attempt scenario, let's say the layover is in New York and all of the, you know, there's really, it never became necessary, yet the government did engage with, you know, Ministry of Justice in the country in which the family was attempting to go from New York. But the kids were safely secured in New York, so it's only an attempt. I could see that the facts of, you know, law enforcement personnel in the United States engaging with their foreign counterparts and with the foreign justice ministry was not necessary because, you know, the defendant and the children were intercepted in New York and never made it to the foreign country. Those expenditures would have been unnecessary because, again, the children were safely secured prior to leaving the country. That's one example where I could see that, you know, the fact that the government was working ahead of itself and, you know, was not particularly confident that the kids would be, that the children would be intercepted at the New York airport and it made, you know, efforts with foreign counterparts that turned out to be unnecessary because of, you know, fortuitous events that the children were intercepted in the United States. I could see that those would be unnecessary expenditures that should not be applied toward, you know, this enhancement to that defendant. There weren't any unusual investigations. In Tankersley or something, the court appointed a receiver who investigated it, which is different. I mean, I could see that, but here, I don't know any other crime in which we charged that enhanced the penalty for investigation. Your Honor, but this goes beyond just investigation because of the efforts that were made to secure the children to get their return back. They would have made that effort even if this didn't apply, right? Not necessarily. If the children had made their way to Pakistan, I mean, our efforts would have, the avenues... No, but I think what Judge Kaney is driving at is that police and so on, they're constantly exerting themselves in dealing with criminal problems, but they're never, but that's never part of the sentence. So what is it about this statute that somehow, just in connection with international kidnapping, this price is affixed to the kidnapper? Your Honor, with respect to this particular guideline, it's a general obstruction guideline that applies to many different obstruction offenses, and with respect to... But you're kidding. We've never seen, I've never seen anything like that, like this before. Did this guideline apply to other... Look, we're constantly dealing with cases in which police exerted themselves to find a criminal or save a kidnapped victim or something of that sort, but then the criminal is not charged with those police executions. So what is it about this international kidnapping that makes it different? The fact that this guideline applies to obstruction offenses generally does not make it, you know, does not in any way sort of nullify it because it's being... But it's never used for that purpose with domestic offenses. I don't know that it hasn't been applied to domestic offenses. I've never seen it either. Well, it's been applied with respect to the case that Judge Keeney cited. I mean, that was not an international parental kidnapping case. Well, that made some sense then because the court appointed a receiver. But again, looking at the application of the enhancement in a scenario like this, again, it's an enhancement that applies to you have a case involving a domestic, you know, kidnapping, for example, where the kidnapper was charged with the police expenses. I don't know the answer to that, Your Honor, if it has been applied to a domestic kidnapping case. I don't know the answer to that. The issue here with respect to whether or not this enhancement applies with respect to international parental kidnapping, the fact that it could apply to virtually most, if not all, international parental kidnapping cases, I don't think nullifies the application of the enhancement to the international kidnapping statute. Well, I'm just curious why the government has picked out this particular minute subset of criminal activities to impose the government's expense on the criminal. I don't get it. I don't know how to answer your question, Your Honor, globally with respect to, you know, other offices and other defendants. With respect to... I would think you'd be curious about that. Well, with respect to, you know, this court's prior holdings in cases like Hayes, this case does fit within Hayes's holding. Given the qualitative nature of what was expended during that 40-period... Are they all international cases? They're not all international cases, Your Honor. And again, going back to the case that Judge Keeney was referencing, that was a contempt of court case. We have cited... That was a what? It was a contempt of court case, I believe. The Tankers Lake case was criminal contempt of court, and where the proceeds of the sale of the yacht had gone, the court applied this enhancement to that sentence. Well, that you can understand. I mean, receivers are paid and so on. But it's... We don't have them in murder cases. We don't have them in regular kidnapping cases. We don't have them in any other kind of case except this. But, Your Honor, I think the one other, you know, factor to consider here is not only do we have the expenditure of all of these resources over this 40-period, but we also have a state court order that the defendant here was in direct violation of. And this court has held, with respect to the... I'm going to butcher this name, but Iengage decision. I mean, the court in that case, and it was another international parental kidnapping case, but this court held in that case that it's appropriate that, you know, when the defendant takes the child outside of the country, you know, that defendant interfered with state court's ability to decide where and with whom the child should reside. And in the Iengage case, they applied the enhancement focusing solely on the fact that the defendant had unilaterally taken this custody decision. But was the enhancement in those cases tied to the actual government expenditures? With respect to Iengage, the court's focus was on the state court order and the defendant's... Yes, so your answer is no. Well, no. In Hayes, Your Honor, in Hayes, the analysis there was on the expenditure of their resources with respect to government and diplomatic resources that were engaged with respect to that defendant, who was the mother of the... the birth mother of the child. Over a two-week period, agents had conducted an investigation within the state of Indiana, and then the district court also cited to the fact that the agent had to travel to Mexico, conduct surveillance, and then return the child back to Indiana. Would this involve, then, the defendant have an opportunity to challenge what the normal expenses are for international kidnapping? I'm not sure I'm following your question. Do you mean expenses... Well, what's the international kidnapping cost, the investigation cost, your run-of-the-mill international kidnapping? The analysis will always depend on the facts, but I mean, I have to agree with the point that this enhancement very likely will apply in these scenarios, depending on the facts, where you have a court order and where you have this substantial and very concentrated effort to get... to investigate and then return the children back to the United States. I don't think that it's... Well, they would have done that in any event. But I don't think that that... they would have, Your Honor, but I don't think that that negates application of this enhancement here. But it's so rare, there doesn't seem to be any policy... Well... The government doesn't seem to have a policy. Well, I think we... I think the government... No, you can do this, but it's done very rarely. And we haven't been told what criteria the government uses in deciding whether to impose this additional cost on a defendant. And I understand the point Your Honor is making, but I don't know that this really lends itself to black and white lines, given just how factually dependent this analysis is. I don't understand that. There's an expense connected with, you know, tracking down the kidnapper. So if you know what the expense is, why can't you just charge it to the criminal? But apparently that's done very, very rarely, which is, I think, what makes us I'm not sure what else to say with respect to how it's applied. I keep going back to the fact that it's very fact-specific, and I just... I don't think it lends itself well to a black and white rule that if it's, you know, this amount of time or this many law enforcement agencies... If you can measure the cost to the government imposed by the criminal, why is there any problem with attaching that to his sentence? With the enhance... I'm not following. With the enhancement? What's special about this case that's different from a zillion other cases in which there's a measurable government expense imposed by the criminal? The international component here, Your Honor, the violation of a court order. I mean, the facts of this specific case, I think, do... The measures that were taken dealing with, you know, the Turkish foreign ministry and international kidnapping is worse than domestic kidnapping? It's not worse, but it's much harder to get the children back, and this would have been virtually impossible for these children to have returned had they made it to Pakistan. In this case, it was concentrated because there was a shrinking window of opportunity, and it was around the clock. And again, that goes to the very much, Ms. Brooke. So, Ms. McShane? I'm actually Ms. McShane. Thank you, Your Honor. I'm sorry, what? Oh, forgive me. I have just a couple points. I think Your Honors have made most of my points, and I don't want to step on anything here, but in the... I, too, don't know how to say the case. Ayan Gade case that Ms. McShane refers to, that was also an Andrews brief case that came to you that way, but there was no court order in that case. It was an ongoing custody battle, which does seem a little bit different than a direct court order if we're looking at facts. I would, again, say Ms. McShane started out by saying, under a clearly erroneous standard, it is a de novo standard at this point in reviewing the application of the guideline. The Hayes case that has been the subject of some discussion, in that case, just so Your Honors know, Nancy Hayes made many, many preparations to hide false passport, false ID, fled. Nobody knew but her where she was going. She went to Mexico, and it took three weeks to find her because she was the only person who knew where she was going. This court and other courts have said that actually is a distinguishing characteristic that makes it more difficult when somebody is deliberately hiding so that they can't be found. That didn't happen here. The reason that they found my client and the children is because he raised his hands, called his wife, and said, I'm here. Come here. So if anything, he mitigated whatever the reasonable expenses would be in this case. Again, I would ask this court to please remand for resentencing without the enhancement. Thank you. Okay. Thank you very much, Ms. Brooke and Ms. McShane.